1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANTHONY CRESPO, JR.,

12              Petitioner,              No. CIV S 04-0404 DFL KJM P

13        vs.

14   KATHY MENDOZA-POWERS            FINDINGS AND RECOMMENDATIONS
     (Warden),
15
                Respondent.
16   _____/

17              Petitioner is a state prisoner proceeding pro se with an application for writ of

18   habeas corpus under 28 U.S.C. §2254.  Petitioner was convicted by a jury in the Superior Court

19   of Sacramento County for the sale and transportation of methamphetamine.  He was sentenced to

20   thirteen years in state prison.  In this court, the petitioner raises the following challenges: (1) that

21   his counsel was improperly changed without his consent (Claim 1), (2) that he was denied

22   effective assistance of counsel (Claim 2), (3) that the trial court committed instructional error

23   (Claim 3), and (4) that the prosecutor committed misconduct (Claim 4).  Respondent denies these

24   allegations and denies that petitioner is entitled to relief.

25   /////

26   /////

                                               1

I.  <u>Background</u>

          Following sentencing, petitioner appealed his conviction to the California Court of Appeal, Third Appellate District, claiming instructional error and prosecutorial misconduct (Claims 3 and 4 herein).  The court of appeal's summary of the facts developed at trial is consistent with this court's reading of the record:

> About 11:35 p.m. on April 20, 2000, Sacramento Police Officer John Banks stopped a car with expired registration tags. Defendant was driving and no one else was in the car. The officer confirmed with the Department of Motor Vehicles that the registration was expired and that defendant's driver's license was suspended. The car was impounded. An inventory search revealed thirteen $20 bills rolled up and in the driver's door handgrip used to close the door. On the floor between the driver's seat and console, an officer found a brown paper bag containing two baggies with a total of 6.44 grams of methamphetamine and a digital gram scale in a pouch. A buck knife was found under the bag. Defendant was arrested and booked. A search of defendant's person revealed a pager and an address book.

> Prints lifted from the brown paper bag, baggies and scale did not match the fingerprints of either defendant or Douglas Hernandez, the owner of the car.

> At trial, an expert witness opined that the methamphetamine was possessed for sale based on the number of $20 bills, the weight of the methamphetamine possessed (two "eight balls"), the pager which provided a means for users to contact the dealer, the scale to measure the methamphetamine sold and the lack of paraphernalia. The expert believed that less than five percent of users possess two "eight balls" for personal use. The lack of a cellular phone did not change the expert's opinion that the methamphetamine was possessed for sale.

> Defendant did not testify.

> Hernandez testified for the defense. He knows defendant through defendant's sister. Hernandez considers defendant a friend but denied that he would lie for defendant. On April 20, 2000, Hernandez loaned his car to defendant. When he did so, he knowingly left inside seven grams of methamphetamine for his personal use, a buck knife, a scale, and $260 in the armrest of the driver's door. Hernandez admitted having been arrested for a drug-related offense. Hernandez never got his car back because he did not have enough money to get it out of impound. He was aware he could be arrested for admitting the methamphetamine was his.

/////

2

On cross-examination, Hernandez admitted having known defendant for seven years having dated and lived with defendant's sister for about that period of time. Hernandez had a child with defendant's sister. He had borrowed $260 from defendant's sister the day of defendant's arrest to pay for a smog inspection for the car in order to register it. He obtained neither the inspection nor registration that day. He drove the car two or three times a week but had not driven it for a week prior to putting the items in the car. Hernandez did not trust people and would never leave his jewelry in the car. On the day of defendant's arrest, Hernandez loaned his car to defendant who needed a ride. Hernandez had never before loaned his car to defendant. Hernandez claimed he forgot about the items in the car. He then stated that he knew the items were in the car but did not tell defendant because he left too fast.

Hernandez had spoken with defendant only a couple of times since defendant's arrest and had visited defendant at the jail once. After defendant told Hernandez what happened, Hernandez claimed he would tell the authorities that the methamphetamine was his. Hernandez never did. Defendant asked Hernandez one time if Hernandez was going to follow through.  Hernandez told defendant that he had made an appointment but failed to show.

Hernandez initially refused to identify the supplier of the methamphetamine found in the car. When the prosecutor moved to strike Hernandez's testimony, Hernandez claimed his supplier was "George" but did not know his last name or phone number. Two days before defendant's arrest, Hernandez claimed he met George playing pool at a bar called Yolanda's. After playing for a couple of hours, George asked Hernandez if he knew whether "anybody [was] looking for anything." Hernandez bought seven grams of methamphetamine, in one package, for $150. Hernandez used his scale to measure it and later divided it, not to sell, but to smoke. He last saw his purchase on the 18th when he bought it from George. Hernandez did not use any on the 18th, 19th or 20th. Although he usually kept methamphetamine in his pocket, he put it in his car. He usually kept his pipe in his pocket or hidden in the house. He could not explain why he did not keep the methamphetamine at the house.

Hernandez claimed he smoked about an eight ball every other day. He said that he smoked a $20 bag at a time. He initially refused to identify his previous supplier (before "George" from whom he purchased methamphetamine only once). The court ordered Hernandez to answer or his entire testimony would be stricken. Hernandez claimed, "I didn't say I used before that." He then admitted having used every other day and his supplier was "David Speed" but Hernandez did not have an address or phone number. At first he claimed he had other suppliers but then quickly retracted that statement and claimed only Speed had been his supplier.

/////

3

> Hernandez claimed he no longer used, the last time being in July when he bought about a quarter ounce. He used to buy on a weekly basis. He had to borrow money to smog and register his car because he spent all his money on methamphetamine.
>
> Hernandez admitted an arrest for drug paraphernalia in July 2000. He knew he could be arrested for claiming the methamphetamine in the car was his. He claimed no one had threatened or asked him to testify. Hernandez admitted that the consequences of admitting the offense were "much greater for the defendant" than for him but that did not influence his testimony. He admitted failing to meet with district attorney investigators despite having had two appointments. He finally met with an investigator the week before trial.

Answer, Ex. D (Court of Appeal Opinion) at 2-6.

The Court of Appeal affirmed petitioner's conviction.  Petitioner sought review of the Court of Appeal's decision in the California Supreme Court.  That request was denied. Following direct appeal, petitioner filed requests for collateral relief on his claims for substitution of counsel without consent and ineffective assistance of counsel (Claims 1 and 2 herein) at all three levels of the California courts.  All of those requests were denied.

II.  Standards for Granting Habeas Relief

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  Federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").  See Ramirez v. Castro, 365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief

1  under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth

2  Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538

3  U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did

4  not address the merits of petitioner's Eighth Amendment claim).[1]  Courts are not required to

5  address the merits of a particular claim, but may simply deny a habeas application on the ground

6  that relief is precluded by 28 U.S.C. § 2254(d).  Lockyer, 538 U.S. at 71 (overruling Van Tran v.

7  Lindsey, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district

8  courts to review state court decisions for error before determining whether relief is precluded by

9  § 2254(d)).  It is the habeas petitioner's burden to show he is not precluded from obtaining relief

10  by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

11          The "contrary to" and "unreasonable application" clauses of § 2254(d)(1)  are

12  different.  As the Supreme Court has explained:

13          A federal habeas court may issue the writ under the "contrary to"
         clause if the state court applies a rule different from the governing
14          law set forth in our cases, or if it decides a case differently than we
         have done on a set of materially indistinguishable facts.  The court
15          may grant relief under the "unreasonable application" clause if the
         state court correctly identifies the governing legal principle from
16          our decisions but unreasonably applies it to the facts of the
         particular case.  The focus of the latter inquiry is on whether the
17          state court's application of clearly established federal law is
         objectively unreasonable, and we stressed in Williams [v. Taylor,
18          529 U.S. 362 2000)] that an unreasonable application is different
         from an incorrect one.

19

20  Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the

21  law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply

22
         [1] In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals
23  held in a § 2254 action that "any independent opinions we offer on the merits of constitutional
     claims will have no determinative effect in the case before us . . .  At best, it is constitutional
24  dicta."  However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain
     relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees.  Title
25  28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation
     of the Constitution before he or she may obtain habeas relief.  See Lockyer, 538 U.S. at 70-71;
26  Ramirez, 365 F.3d at 773-75.

1  fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8

2  (2002).

3          The court will look to the last reasoned state court decision in determining

4  whether the law applied to a particular claim by the state courts was contrary to the law set forth

5  in the cases of the United States Supreme Court or whether an unreasonable application of such

6  law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S.

7  919 (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial

8  of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court

9  must perform an independent review of the record to ascertain whether the state court decision

10  was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other

11  words, the court assumes the state court applied the correct law, and analyzes whether the

12  decision of the state court was based on an objectively unreasonable application of that law.

13          It is appropriate to look to lower federal court decisions to determine what law has

14  been "clearly established" by the Supreme Court and the reasonableness of a particular

15  application of that law.  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

16  III.  Arguments and Analysis

17      A.  Change of Appointed Counsel Without Petitioner's Consent (Claim 1)

18          Petitioner contends that his assigned counsel was changed from an unknown

19  public defender to Assistant Public Defender Joseph Cress without his consent.  This claim was

20  presented via a petition for writ of habeas corpus to all three levels of the California state courts.

21  In denying the claim, the Sacramento County Superior Court found:

22          Petitioner . . . attaches no reasonably available documentary
            evidence to support his claim (Harris, supra)[2]. Indeed, the minute
23          orders do not indicate that anyone other than the public defender's
            office had ever been appointed to represent petitioner.  Joseph
24          Cress was an assistant public defender, who appears to have been

25  _____

26      [2]  In re Harris, 5 Cal. 4th 813, 827 n.5 (1993) (requiring that claims be supported by
    reasonably available documentary evidence or affidavits).

                                        6

early assigned to the case.  The minute order for May 24, 2000 indicates that assistant public defendant A. Rogers made an appearance on Mr. Cress's behalf, to request a continuance, while Mr. Cress was in trial.  However, no other minute order indicates that anyone other than Mr. Cress was counsel of record for the case.  The claim, therefore, fails under <u>Swain</u>[3] and <u>Harris</u>, <u>supra</u>.

Answer, Ex. H (Order denying petition for writ of habeas corpus) at 3.

The "supporting facts" provided by petitioner in each petition to the California courts were as follows: "At some point between the S.C.R. proceedings and preliminary hearing original counsel was subbed out for counsel Joseph Cress this was done without petitioner's consent or waiver or showing of good cause."  <u>Id</u>., Ex. G at 5, Ex. I at 5 & Ex. K at 5.  Petitioner submitted no documentary evidence to any California court in support of this claim.[4]

Respondent does not claim there is a procedural bar to this court's consideration of this claim due to failure to exhaust state remedies.  However, the Ninth Circuit has interpreted a <u>Swain</u> citation to mean a defendant has failed to exhaust state remedies because the defendant is being given an opportunity to amend his pleadings to plead facts with specific particularity.  <u>King v. Roe</u>, 340 F.3d 821, 823 (9th Cir. 2003).  A citation to <u>Harris</u> would likewise indicate a failure to exhaust state remedies because the defendant is being given the opportunity to present reasonably available documentary evidence or affidavits in support of his claim.  Although respondent has not addressed the impact of the <u>Swain/Harris</u> citation on the posture of this case, this court can no longer find that respondent has waived exhaustion based on litigation conduct.

---

[3]  <u>In re Swain</u>, 34 Cal. 2d 300 (1949) (requiring petitioner to state with particularity the facts upon which he is relying to justify relief).

[4]  In support of his claim for ineffective assistance of counsel in his petition to the superior court, petitioner attached as Exhibit "A" requests he made for copies of the court minute orders and hearing transcripts, which were denied.  <u>See</u> Answer, Ex. G.  In his petitions to the California Court of Appeal and Supreme Court, petitioner appends to Exhibit "A" (also in support of his ineffective assistance of counsel claim) the court minute orders from the Clerk's Transcript on Appeal.  <u>Id</u>., Exs. I & K.  Thus, petitioner appears to have cured this defect with respect to his ineffective assistance of counsel claim, but not with respect to his claim of improper substitution of counsel.

1   <u>Banks v. Dretke</u>, 540 U.S. 668, 674 (2004); 28 U.S.C. § 2254(b)(3).  Nevertheless, the court may

2   address petitioner's claims "when it is perfectly clear that the petitioner has no chance of

3   obtaining relief."  <u>Cassett v. Stewart</u>, 406 F.3d 614, 624 (9th Cir. 2005), <u>cert</u>. <u>denied</u>, ___ U.S.

4   ___ , 126 S.Ct. 1336 (2006).  Having considered the petition and its exhibits, the answer, reply

5   and state court record, the court finds the <u>Cassett</u> standard has been satisfied, and thus addresses

6   this claim below.

7            While petitioner fails to directly state the basis for his claim in the petition to this

8   court, in his state court petitions he alleges the substitution of counsel constituted "denial of due

9   process in violation of Amendments VI and XIV to the Constitution," and the superior court

10  interpreted it as such in its ruling.  Accordingly, this claim is properly interpreted as intending to

11  state a claim for violation of the Sixth Amendment right to counsel and due process under the

12  federal Constitution.

13           The superior court correctly found that petitioner's claim was not supported by the

14  facts.  The minute orders indicate the Public Defender's office was appointed on April 25, 2000.

15  Clerk's Transcript (CT) 1.  It is unclear from the minutes when Assistant Public Defender Joseph

16  Cress first appeared, although this seems to have been early in the proceedings.  After his

17  appointment, Mr. Cress acted as attorney of record throughout the case. CT 1-5.  Another public

18  defender may have appeared for petitioner during the early stages of the proceedings, and the

19  minute orders do reflect that a public defender named "A. Rogers" appeared on behalf of Mr.

20  Cress on May 24, 2000, for the limited purpose of obtaining a continuance because Mr. Cress

21  was in trial.  CT 2.  These appearances do not, however, constitute a substitution, improper or

22  otherwise.  Petitioner admits that both of the attorneys appearing in his case were from the public

23  defender's office.  He makes no contention that anyone other than a public defender appeared on

24  his behalf or consulted with him about his case.  Thus, petitioner's claim of substitution of

25  counsel without his consent is not supported by the facts.

26  /////

1     Even if petitioner could establish counsel was substituted, he has not shown that

2   he had a right to consent to (and presumably refuse) any substitution.  Petitioner does not allege

3   that he was denied counsel or the right to represent himself.[5]  Petitioner was not entitled to

4   appointment of counsel of his choice.  See Morris v. Slappy. 461 U.S. 1, 13-16 (1983); United

5   States v. Mack, 362 F.3d 597, 599 n.3 (9th Cir. 2004).   It follows that petitioner's consent was

6   not required for any substitution of counsel, if one was in fact made.  Accordingly, petitioner

7   fails to state a claim for habeas relief.

8     Based upon the foregoing, the state court's denial of petitioner's claim was neither

9   contrary to nor an unreasonable application of clearly established United States Supreme Court

10  precedent.  28 U.S.C. § 2254(d)(1).  Petitioner is not entitled to habeas relief on this claim.

11      B.  Denial of Effective Assistance of Counsel (Claim 2)

12          1.  Legal Standards

13      The Sixth Amendment guarantees the effective assistance of counsel.  In

14  Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court sets forth a

15  two-part test for demonstrating ineffective assistance of counsel.  To support a claim of

16  ineffective assistance of counsel, a petitioner must first show that, considering all the

17

18          [5]  In his traverse, petitioner notes in support of his claim for ineffective assistance of
    counsel that the trial court convinced him not to pursue a request to have Cress relieved of his
19  duties.  Traverse at 3.  This appears to refer to petitioner's request for a continuance on July 27,
    2000.  When the trial court denied the request, petitioner indicated he wanted to make a
20  "Marsden"[sic]  motion and asked to represent himself in place of Mr. Cress.  In response, the
    court indicated that the matter would be sent out for trial that day and that any request by
21  petitioner for a continuance due to petitioner's self-representation would be denied as a delaying
    tactic.  In light of this, petitioner withdrew his request, stating that he had "full confidence" in
22  Mr. Cress.  Augmented Reporter's Transcript (ART) 3-7.  Petitioner raised a due process claim
    related to this hearing in his state court petitions.  Answer, Exs. G at 6, I at 6 & K at 6. In the last
23  reasoned decision on the claim, the superior court considered and denied the claim on the merits
    and on procedural grounds.  Answer, Ex. H at 3-4.  To the extent this reference constitutes a
24  separate claim for relief in this court, petitioner has not exhausted his state court remedies.
    Pappageorge v. Sumner, 688 F.2d 1294 (9th Cir. 1982).  Furthermore, petitioner did not raise this
25  claim in this court, if at all, until his traverse.  A ground for relief is not properly raised in a
    traverse.  Cacoperdo v. Demosthenes, 37 F.3d 504, 508 (9th Cir. 1994).  Accordingly, this court
26  interprets this reference as support for petitioner's ineffective assistance of counsel claim only.

9

1  circumstances, counsel's performance fell below an objective standard of reasonableness.  See

2  Strickland at 687-88.  After a petitioner identifies the acts or omissions he alleges are not the

3  result of reasonable professional judgment, the court must determine whether, in light of all the

4  circumstances, the identified acts or omissions were outside the wide range of professionally

5  competent assistance.  Id. at 690.

6          Second, a petitioner has the burden of establishing that he was prejudiced by

7  counsel's deficient performance.  Strickland at 693-94.  Prejudice is found where "there is a

8  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

9  would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to

10 undermine confidence in the outcome."  Id.  A reviewing court "need not determine whether

11 counsel's performance was deficient before examining the prejudice suffered by the defendant as

12 a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the

13 ground of lack of sufficient prejudice . . . that course should be followed.  Pizzuto v. Arave, 280

14 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697),[6] cert. denied, ___ U.S. ___,

15 126 S. Ct. 546 (2005).

16         In assessing an ineffective assistance of counsel claim, judicial scrutiny must be

17 "highly deferential."  Strickland at 689.  "It is all too easy for a defendant to second-guess

18 counsel's assistance after conviction or adverse sentence, and it is all too easy for a court,

19 examining counsel's defense after it has been proved unsuccessful, to conclude that a particular

20 act or omission by counsel was unreasonable.  Id.  Because of this, "[t]here is a strong

21 presumption that counsel's performance falls within the 'wide range of professional assistance.'"

22 Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland at 689).

23         A habeas petitioner bears the burden of showing that he did not receive effective

24 assistance of counsel.  Saunders v. Eyman, 600 F.2d 728, 729 (9th Cir. 1977).

25

26         [6]  The original dissent in Pizzuto has been amended and superseded.  See Pizzuto v.
   Arave, 385 F.3d 1247 (9th Cir. 2004).

1          2. Petitioner's Claims

2          Petitioner claims that his trial counsel rendered ineffective assistance by

3  (1) failing to be present at all court proceedings and failing to perform his duties to explain the

4  proceedings to petitioner; (2) failing to inform him of an unreported chambers meeting during

5  which counsel agreed that the district attorney would be allowed to question defense witness

6  Hernandez concerning whether he knew that the consequences for a conviction for possession of

7  methamphetamine for sale were greater for petitioner than for Hernandez; (3) failing to inform

8  him of all plea offers; and (4) failing to advise him that taking a plea rather than going to trial

9  would be a prudent choice.  Petition, Attachment ("Ground 2").[7]

10         Petitioner raised all but one of these claims for the first time in his petition for

11 writ of habeas corpus filed in the Sacramento Superior Court,[8] which denied them for the

12 following stated reasons:

13         Petitioner first claims that his trial counsel rendered him ineffective
           assistance, in failing to properly advise him of the court
14         proceedings and the plea bargains offered by the district attorney.

15         Specifically, petitioner claims that at a first meeting, at the S.C. R.
           conference, he was offered 32 months in a bargain but was advised
16         by his counsel, who was not yet Joseph Cress, then not to accept
           the offer.  He claims that counsel at the time did not inform him of
17         the possible consequences by not accepting the offer, nor of the 15-
           year maximum sentence he faced.
18
           The reporter's transcript for the judgment and sentencing hearing
19         held on September 21, 2000 before Judge Shepard does contain a
           reference by defense counsel Joseph Cress to an offer for 32
20         months that was made at the S.C.R. conference.  Petitioner,
           however, firmly stated at the judgment and sentencing hearing that
21

22         [7] For ease of analysis, these claims are presented here in an order different from that of
   the petition.

23
           [8] As discussed below, petitioner did not raise, and the state courts did not consider, the
24 claim that counsel rendered ineffective assistance by failing to attend court hearings and failing
   to correctly inform him of the proceedings as ordered by the court during one of the hearings.  In
25 support of his due process claim for denial of his so-called "Marsden" request, petitioner did
   claim that counsel failed to appear on July 20 and July 21, 2000.  See, e.g., Answer, Ex. G at 6.
26 As noted, petitioner's "Marsden" claim is not before this court.

                                                11

he deliberately chose not to take the offer because he believed he was innocent and would be found innocent at trial.  The case involved a stop of petitioner while driving a vehicle, of which he was the sole occupant; his defense was that the drugs found belonged to another person, Hernandez, and not to him.  At the judgment and sentencing hearing, Judge Shepard affirmatively stated that petitioner had a witness, Hernandez, who petitioner wanted the jury to hear, and that the jury simply chose not to believe the witness.  This implies that petitioner believed he had a valid defense that would be believed, and wanted to go to trial rather than take the deal for 32 months because he thought he would be acquitted.  Petitioner does not present sufficient evidence to show otherwise, other than a bare conclusory statement in this petition made after trial, conviction, and sentence.

To make a claim under Alvernaz,[9] a defendant must show that: (1) counsel was ineffective in advising the defendant at the pretrial stage regarding a proffered plea bargain, (2) there is a reasonable probability that, but for the deficiency, the defendant would have accepted the proffered peal bargain, and (3) the plea bargain would have been approved by the trial court.

Since petitioner was steadfast in his claim of innocence even at the time of judgment and sentencing, and had his witness appear[ed] at trial to claim that the drugs belonged to the witness and not to petitioner, which the jury ended up not believing, it is clear that petitioner would have rejected the plea bargain even if his counsel had not advised him of his maximum exposure if he went to trial and were convicted at the time of the purported plea offer.  As such, petitioner's claim fails under Alvernaz and is denied.

Petitioner also claims that his second counsel, Joseph Cress, also failed to advise him to accept a plea offer over going to trial.  He claims that counsel was unaware of a 5-year plea offer made by the district attorney at the time of jury selection.

The reporter's transcript for the judgment and sentencing hearing held on September 21, 2000 before Judge Shepard does contain a reference by the district attorney to an offer for five years that was made at the time of jury selection, and a comment by Joseph Cress that he did not recall any such offer being made.

For the reasons stated above, this claim fails as well under Alvernaz, as petitioner wanted to go to trial and be acquitted after presenting his witness's testimony.  The claim is denied.

/////

---

[9] In re Alvernaz, 2 Cal.4th 924 (1992).

1   Petitioner also claims that counsel was ineffective in failing to
2   advise petitioner of an in chambers meeting in which the judge
    ruled that the district attorney could question a defense witness to
3   show that petitioner had greater consequences to lose.

4   Petitioner states nothing further with regard to this claim, nor does
    he attach any reasonably available documentary evidence that
5   would reveal any further detail of or give support to this claim.
    Petitioner does attach one page of a trial transcript showing that a
6   mistrial motion was made regarding a statement about
    consequences, but nothing further can be discerned from it.  As
7   such, petitioner fails to state with particularity the facts upon which
    he is relying to justify relief (In re Swain (1949) 34 Cal. 2d 300),
8   supported by reasonably available documentary evidence or
    affidavits (In re Harris (1993) 5 Cal.4th 813. 827 fn.5), and fails to
9   state a prima facie case for relief (In re Bower (1985) 38 Cal.3d
    865).

10  Answer, Ex. H at 1-3.

11                  a.  Failure to Attend Court Hearings and Explain Proceedings

12          Petitioner contends that counsel rendered ineffective assistance by failing to

13  attend certain court hearings and failing to explain the proceedings to petitioner as ordered by the

14  court during one of those hearings.  This instance of alleged ineffective assistance was not

15  considered in the state courts.  Thus, petitioner has failed to exhaust state remedies.

16  Pappageorge, 688 F.2d at 1294.  As noted above, pursuant to Cassett, supra, the court may

17  nonetheless address petitioner's claims "when it is perfectly clear that the petitioner has no

18  chance of obtaining relief."  Cassett, 406 F.3d at 624.  After considering the petition and its

19  exhibits, the answer, reply and state court record, the court finds the Cassett standard has been

20  satisfied, here as well, and thus addresses this claim.

21          It is unclear from the petition which hearings petitioner contends counsel failed to

22  attend, or at which hearing counsel was ordered to explain the proceedings to petitioner.  As

23  noted above, the minute orders do reflect an appearance by another public defender on behalf of

24  Mr. Cress on May 24, 2000.  CT 2.  This does not constitute a failure to appear by counsel.  In

25  addition, in his state court petitions, in support of his claim that the trial court erred in denying

26  his request that Cress be removed so petitioner could represent himself (incorrectly identified by

                                          13

1   petitioner as a "Marsden" request), petitioner also contends that counsel failed to appear for

2   hearings on July 20 and July 21, 2000.  Answer, Exs. G at 6, I at 6 & K at 6.  The court's minute

3   orders reflect continuances of  trial-setting conferences scheduled for those dates, but make no

4   reference to counsel's appearance or nonappearance.  Petition, Ex. A; CT 3.  Thus, petitioner has

5   failed to establish that counsel failed to appear at any hearings.  Further, petitioner fails to

6   provide any factual showing to support his conclusory allegation that "counsel failed to perform

7   his dutys [sic] correctly" in explaining the proceedings to him as ordered by the court at one of

8   the hearings counsel allegedly did not attend, and relief should be denied on that basis.  <u>See Jones</u>

9   <u>v. Gomez</u>, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported

10  by a statement of specific facts do not warrant habeas relief'" (quoting <u>James v. Borg</u>, 24 F.3d

11  20, 26 (9th Cir. 1994)).

12          In addition, petitioner fails to show that considering all the circumstances,

13  counsel's alleged conduct fell below an objective standard of reasonableness.  <u>Strickland</u>, 466

14  U.S. at 687-88.  The record reflects that Mr. Cress was in trial during the periods in question.

15  <u>See</u> Petition, Ex. A; CT 1-4; ART at 3-5.  Whether or not Mr. Cress (or someone else) appeared,

16  there is no indication that anything other than a continuance occurred at any of these hearings.

17  CT at 3.  Under the circumstances, counsel's  alleged actions (or inactions) do not fall outside the

18  wide range of professionally competent assistance.  <u>Strickland</u>, 466 U.S. at 690.

19          Moreover, petitioner has failed to show that had counsel appeared at the hearings

20  and explained the proceedings as ordered by the court, the result of the proceedings would have

21  been different.  <u>Id</u>. at 694.  Accordingly, petitioner has failed to meet his burden of establishing

22  that he was prejudiced by counsel's allegedly defective performance.   For all of the above

23  reasons, petitioner is not entitled to habeas relief on this claim.

24                      b.  <u>Failure to Advise of Unreported Chambers Meeting</u>

25          Petitioner also claims that counsel was ineffective in failing to inform him of an

26  unreported meeting in chambers just prior to trial, during which the judge ruled that the district

1   attorney could cross-examine Mr. Hernandez regarding the fact that petitioner faced greater

2   consequences from conviction than Hernandez would.  The superior court rejected this claim,

3   finding petitioner failed to state with particularity the facts upon which he was relying and to

4   support them with reasonably available documentary evidence, again citing Swain and Harris.

5   The superior court also found that petitioner failed to state a case for prima facie relief under In

6   re Bower, 38 Cal.3d 865 (1985).  As previously noted, the superior court's citation to Swain and

7   Harris indicates a failure to exhaust state court remedies.  However, this court finds under Cassett

8   that it is perfectly clear that petitioner has no chance of obtaining relief on this issue.

9   Accordingly, the claim is addressed below.

10          In support of this claim, petitioner attaches as Exhibit B to his petition an excerpt

11  from the reporter's transcript, which contains a reference by Mr. Cress to a meeting in chambers

12  during which counsel had agreed to the form of the question to be posed to Hernandez by the

13  district attorney.  During the trial, Mr. Cress objected to the prosecutor's questioning of Mr.

14  Hernandez and moved for a mistrial, which was denied.[10]  Reporter's Transcript (RT) 177-180.

15  Petitioner contends that counsel failed to inform him of the pre-trial meeting in chambers (and

16  presumably of the court's ruling during that meeting concerning the district attorney's

17  questioning of Hernandez) and that this constituted ineffective assistance of counsel.  However,

18  petitioner fails to show how this conduct fell below an objective standard of reasonableness, or

19  how he was prejudiced.  He does not explain how his possessing this information would have

20  altered the result in any way.  Petitioner's allegations with respect to this claim are vague and

21  conclusory and relief should be denied as a result.  Jones, 66 F.3d at 204.

                            c.  Failure to Advise of Plea Offers

23          Petitioner also contends that counsel was ineffective in failing to advise him of all

24  plea offers.  The superior court denied this claim, citing In re Alvernaz, 2 Cal. 4th 924 (1992),

25
        [10]  This dispute is also the basis of petitioner's claim of prosecutorial misconduct
26  presented in his state court appeals and in his petition to this court, discussed below.

                                            15

1   which, as noted above, provides that to prevail on such a claim, the defendant must show that

2   counsel was ineffective in advising the defendant at the pretrial stage regarding a proffered plea

3   bargain and that there is a reasonable probability that, but for the deficiency, the defendant would

4   have accepted the proffered plea bargain.  Alvernaz, 2 Cal. 4th at 936-38.  The Ninth Circuit has

5   held that Alvernaz "sets forth the same requirements as Strickland in demonstrating an

6   ineffective assistance claim in the context of plea bargaining" and that therefore, a state court

7   ruling following Alvernaz is not "contrary to" clearly established Supreme Court law.  Nunes v.

8   Mueller, 350 F.3d 1045, 1053 (9th Cir. 2003).

9           An attorney's failure to communicate the government's plea offer to his client

10  constitutes unreasonable conduct under prevailing professional standards and such a claim, if

11  proven, would meet the first part of the Strickland test.  United States v. Blaylock 20 F.3d 1458,

12  1465-66 (9th Cir. 1994).  Petitioner identifies two plea offers by the district attorney: a 32-month

13  offer made and rejected during the very early stages of the proceedings (and apparently before

14  Mr. Cress appeared), and a five-year offer made just prior to jury selection.  Petition, Attachment

15  ("Ground 2") & Ex. B.  Petitioner's statements at the sentencing hearing show he knew about the

16  32-month offer.  See RT 296-297 (Petitioner's statements that he would have taken the 32-month

17  offer if he had known of the drugs in the vehicle).  Thus, petitioner's allegation that he was not

18  advised of this offer is contrary to the evidence.

19          At the sentencing hearing Mr. Cress stated he did not recall the five-year offer.

20  Petition, Ex. B; RT 294.  The district attorney stated that she had made the offer just prior to jury

21  selection and it had been rejected.  Petition, Ex. B; RT 293.  Petitioner claims not to have known

22  of this offer.  The record is unclear whether Mr. Cress or another public defender rejected the

23  offer on petitioner's behalf.  In either event, failing to communicate the offer or rejecting it

24  without informing petitioner could rise to the level of ineffective assistance of counsel if

25  petitioner was able to prove prejudice.  See Jones v. Wood, 114 F.3d 1002, 1012 (9th Cir. 1997).

26   "In order to prove prejudice where counsel fails to inform the petitioner about a plea offer, the

1   petitioner must prove there was a reasonable probability he would have accepted the offer." <u>Id</u>.

2   at 1012 (citing <u>Blaylock</u> at 1466-67).  In this case, although petitioner states "there would have

3   been a different outcome of proceedings," Petition, Attachment ("Ground 2"), he does not

4   specifically allege that he would have accepted either offer.  Even if his petition could be

5   interpreted to allege this, such an allegation is contrary to the evidence.  It is clear from the

6   record that petitioner believed he had a valid defense and wanted to go to trial and present his

7   witness, Mr. Hernandez.  He stated unequivocally at the sentencing hearing that he would have

8   taken the 32-month offer only if he had been guilty, i.e., if he had had knowledge of the drugs in

9   the vehicle. RT 296-297.  It is evident he would not have accepted the longer five-year plea for

10   the same reason.  Thus, the superior court correctly found that petitioner did not prove there was

11   a reasonable probability he would have accepted a plea offer.  The state court's denial of this

12   claim was therefore neither an unreasonable determination of the facts nor an unreasonable

13   application of clearly established federal law.

14               d.  <u>Failure to Advise Petitioner to Accept a Plea</u>

15          Petitioner claims that counsel was ineffective because Mr. Cress did not advise

16   him that taking a plea rather than going to trial would be a prudent choice.  In retrospect, such an

17   assessment would appear to have been correct, because petitioner ultimately received a sentence

18   of thirteen years, over twice the five years offered by the district attorney just prior to trial.

19   Citing <u>Alvernaz</u> the superior court found this claim failed because petitioner wanted to go to trial

20   and be acquitted after presenting his witness's testimony.  As discussed above, this ruling is not

21   "contrary to" clearly established federal law.  <u>Nunes</u>, 350 F.3d at 1053.

22         Counsel is required to ensure that a client understands the terms of a plea offer

23   and its significance.  <u>See</u> <u>United States v. Rivera-Sanchez</u>, 222 F.3d 1057, 1060-61 (9th Cir.

24   2000).  Failing to advise a client to enter a plea bargain when it is clearly in the client's best

25   interest to do so is ineffective assistance of counsel.  <u>United States v. Leonti</u>, 326 F. 3d 1111,

26   1117 (9th Cir. 2003); <u>Boria v. Keane</u>, 99 F.3d 492, 497 (2d Cir. 1996).  The <u>Strickland</u> analysis

1   applies to claims of ineffective assistance of counsel involving counsel's advice offered during

2   the plea bargain process.  See Hill v. Lockhart, 474 U.S. 52, 58 (1985).  Whether an attorney's

3   advice constituted ineffective assistance of counsel must be determined on the basis of the

4   situation as the attorney saw it when he gave the advice and not on the basis of a hindsight

5   analysis of the correctness of that advice.  Strickland, 466 U.S. at 689 ("A fair assessment of

6   attorney performance requires that every effort be made to eliminate the distorting effects of

7   hindsight and to evaluate the conduct from counsel's perspective at the time.").  In order to

8   prevail on this claim, petitioner must demonstrate "gross error on the part of counsel."  McMann

9   v. Richardson, 397 U.S. 759, 772 (1970).

10          Although in hindsight counsel would have been wise to advise the petitioner to

11   take either plea, the fact that he did not do so cannot be said to be ineffective assistance of

12   counsel under this court's "highly deferential" "scrutiny of counsel's performance."  Strickland,

13   466 U.S. at 689.  It cannot be said that at the time of the plea offers, a plea was clearly in the best

14   interest of petitioner.  Both petitioner and his counsel believed defendant had a meritorious

15   defense.  RT 294-297.  Neither knew that the jury would not believe Mr. Hernandez's testimony.

16   Id.  An attorney's advice is not constitutionally defective because the attorney lacks a crystal ball.

17   See Turner v. Calderon, 281 F. 3d 851, 881 (9th Cir. 2002).  Accordingly, petitioner has failed to

18   show that counsel's performance fell below an objective standard of reasonableness.

19          Furthermore, petitioner has failed to show that he would have been persuaded by

20   counsel to accept the offer.  As noted above, petitioner's remarks at sentencing indicate that he

21   believed he would prevail at trial and that he would have accepted the 32-month offer only if he

22   had had knowledge of the drugs in the car.  RT 296-297.  In fact, petitioner cited his rejection of

23   the 32-month plea offer as proof of his innocence, stating it was his practice to take the first plea

24   offer when he was guilty.  See RT 296 ("[B]y looking at the probation report, you can judge my

25   character.  Now, my character is, if I was guilty of that, I usually do take the first offer.").  It is

26   improbable that counsel would have been able to convince petitioner to take either offer under

1   the circumstances.  Petitioner cannot show that he was prejudiced by counsel's failure to advise

2   him to accept a plea offer rather than go to trial as required under Jones and Blaylock.  Thus, the

3   state court properly rejected petitioner's claim and denial of the claim was neither an

4   unreasonable determination of the facts nor an unreasonable application of clearly established

5   federal law.

6           For the above reasons, petitioner is not entitled to habeas relief on his claim for

7   ineffective assistance of counsel.

8           C.  Instructional Error (Claim 3)

9           Petitioner claims the trial judge erred in deciding to include only a portion of the

10  bracketed language contained in a California standard form jury instruction, CALJIC 2.02, in his

11  instructions to the jury.  The unmodified form of CALJIC 2.02 is as follows:

12          The [specific intent] [or] [and] [mental state] with which an act is
            done may be shown by the circumstances surrounding the
13          commission of the act. However, you may not [find the defendant
            guilty of the crime charged [in Count [s] _____, _____, _____, and
14          _____], [or] [the crime[s] of _____, _____,
            _____, which [is a] [are] lesser [crime[s],] [or] [find the
15          allegation _____ to be true,] unless the proved
            circumstances are not only (1) consistent with the theory that the
16          defendant had the required [specific intent] [or] [and] [mental
            state] but (2) cannot be reconciled with any other rational
17          conclusion.

18          Also, if the evidence as to [any] [specific intent] [or] [mental state]
            permits two reasonable interpretations, one of which points to the
19          existence of the [specific intent] [or] [mental state] and the other to
            its absence, you must adopt that interpretation which points to its
20          absence. If, on the other hand, one interpretation of the evidence as
            to the [specific intent] [or] [mental state] appears to you to be
21          reasonable and the other interpretation to be unreasonable, you
            must accept the reasonable interpretation and reject the
22          unreasonable.

23  Answer, Ex. D (Decision of Court of Appeal) at 6-7.

24  /////

25  /////

26  /////

19

1    At trial, petitioner's counsel requested that the court include both of the key terms

2    in brackets (i.e., "specific intent" and "mental state") as to both Counts One and Two, arguing

3    that this was necessary because elements of both of the offenses, and the lesser included offense

4    of simple possession, include the mental state of knowledge:

5    Well, with respect to 2.02, again, it is still my provision *[sic]* that
     the language regarding mental state should be kept in there with
6    respect to knowledge, which appears to be a requirement in both
     the charged offenses and lesser offense.

7    * * *

8
     I'm making the same request here, in that the charged offenses do
9    have a mens rea of knowledge, and I would ask that that be
     included in 2.02.  I think the first paragraph of 2.02 would also
10   need to state specific intent and mental state.

11   RT 182-183.

12   The trial court denied the request, noting that knowledge of the presence of the

13   controlled substance and knowledge of its nature as a controlled substance are both elements of

14   the charged offenses, and opining that the court was not required to give an instruction on mental

15   state with respect to CALJIC 2.02.  RT 183-184.  As a result, CALJIC No. 2.02, as given, was

16   limited to "specific intent," which related only to Count One for possession for sale.  The

17   instruction read to the jury was as follows:

18   The specific intent with which an act is done may be shown by the
     circumstances surrounding the commission of the act. However,
19   you may not find the defendant guilty of the crime charged in
     Count One, possession of methamphetamine for the purposes of
20   sale, unless the proved circumstances are not only, one, consistent
     with the theory that the defendant had the required specific intent
21   but, two, cannot be reconciled with any other rational conclusion.

22   Also, if the evidence as to the specific intent permits two
     reasonable interpretations, one of which points to the existence of
23   the specific intent and the other to its absence, you must adopt that
     interpretation which points to its absence.

24   /////

25   /////

26   /////

20

1
> If, on the other hand, one interpretation of evidence as to the
> specific intent appears to you to be reasonable and the other to be
> unreasonable, you must accept the reasonable interpretation and
> reject the unreasonable.

2

3

4   RT 192-193.

5          Petitioner contends that, as a result of the court's decision to eliminate the

6   language concerning the mental state of knowledge from CALJIC 2.02, the jury was not properly

7   instructed on the sufficiency of circumstantial evidence to prove the mental state of knowledge

8   with respect to either count.  Petitioner alleges that because the claimed lack of knowledge was

9   the essence of his defense, this error constituted a denial of due process under the federal

10  constitution, in that the jury was not properly instructed on the defendant's theory of the case.

11  Petition, Attachment ("Ground 3").

12         This claim was presented to the California Court of Appeal on direct appeal and to

13  the California Supreme Court on a petition for review, and was denied by both.  In rejecting

14  petitioner's claim, the Court of Appeal found:

15
> The trial court instructed the jury on the elements of the offenses,
> possession of methamphetamine for sale (CALJIC No. 12.01) and
16
> transportation of methamphetamine (CALJIC No. 12.02).
> Elements of both offenses include that defendant knew of the
17
> presence of the methamphetamine and of the nature of the
> substance as a controlled substance. The trial court instructed the
18
> jury on direct and circumstantial evidence ( CALJIC No. 2.00) and
> that a crime may be proven by circumstantial evidence ( CALJIC
19
> No. 2.01).

20
> The jury was also instructed to consider the instructions as a whole
> (CALJIC No. 1.01). Based on the instructions given, the jury was
21
> properly instructed on the use of circumstantial evidence to prove
> the crimes, including the element of knowledge. The jury was
22
> instructed that it must find that defendant knew of the presence and
> nature of the controlled substance and that circumstantial evidence
23
> could be used to prove the same but to reject unreasonable
> interpretations of the evidence and to give defendant the benefit of
24
> reasonable doubt. Any defect in CALJIC No. 2.02 was cured by the
> other instructions given.

25

26  Answer, Ex. D at 9-12 (footnotes omitted).

1          A criminal defendant is entitled to adequate instructions on the defense theory of

2    the case.  Conde v. Henry, 198 F.3d 734, 739 (9th Cir. 2000).  A refusal adequately to instruct

3    may deprive a defendant of due process.  Id. at 741.   However, "the exact language proposed by

4    the defendant need not be used, and it is not error to refuse a proposed instruction so long as the

5    other instructions in their entirety cover that theory."  United States v. Kenny, 645 F.2d 1323,

6    1337 (9th Cir. 1981); United States v. Del Muro, 87 F.3d 1078, 1081 (9th Cir. 1996).  An

7    examination of the record is required to see precisely what instructions were given and what was

8    refused, and whether the given instructions embodied the defendant's theory.  See United States

9    v. Tisinnijinnie, 601 F.2d 1035, 1040 (9th Cir. 1979).

10          An examination of the record demonstrates that the instructions in their entirety

11    adequately covered the defense theory of the case as identified by petitioner, specifically, that

12    petitioner lacked the requisite knowledge.   As the Court of Appeal correctly observed, the trial

13    court instructed the jury using CALJIC Nos. 12.01 and 12.02, which define the charges of

14    possession for methamphetamine for sale and transportation of methamphetamine, respectively,

15    and set forth the elements to be proven as to each charge.  RT 198-200; CT 63-64.  Both of these

16    instructions state that elements of the offense include that defendant knew of the presence of

17    methamphetamine and its nature as a controlled substance.  Id.  The jury was further instructed

18    on direct and circumstantial evidence (CALJIC 2.00) and that a crime may be proven by

19    circumstantial evidence (CALJIC 2.01).  RT 189-191; CT 58-59.  Included in CALJIC 2.01 is the

20    following language: "[i]f the circumstantial evidence as to any particular count permits two

21    reasonable interpretations, one of which points to the defendant's guilt and the other to his

22    innocence, you must adopt that interpretation that points to the defendant's innocence and reject

23    that interpretation that points to his guilt."  RT 191.  Finally, the jury was instructed to consider

24    the instructions as a whole (CALJIC 1.01).   RT 187; CT 57.  Thus, the jury was instructed that

25    to convict petitioner of either charge, it had to find that petitioner knew of the presence of the

26    methamphetamine and its nature as a controlled substance; that circumstantial evidence could be

used to prove this; that if the circumstantial evidence was susceptible to two conflicting

interpretations jurors should draw all inferences in favor of the defendant; and that they must

consider the instructions as a whole. Taken collectively, the instructions sufficiently embodied

the defense theory of the case such that there was no due process violation in this regard.

A jury instruction also violates due process if it fails to give effect to the

requirement that the state prove every element of the offense. Sandstrom v. Montana, 442 U.S.

510, 520-21 (1979). "Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury

instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437

(2004). Rather, the question is whether the "ailing instruction by itself so infected the entire trial

that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991).

In making this determination, a single instruction "may not be judged in artificial isolation, but

must be viewed in the context of the overall charge." Boyde v. California, 494 U.S. 370, 378

(1990). As noted above, although the trial court refused to give the instruction as requested by

petitioner, the jury was nonetheless properly instructed on all of the elements of the offenses to

be proven by the state. Thus, there was no deficiency. Even assuming such a deficiency,

petitioner has failed to show that it "so infected the entire trial that the resulting conviction

violates due process." Estelle, 502 U.S. at 72.

Based upon the foregoing, the state court's rejection of petitioner's claim was not

contrary to nor an unreasonable application of clearly established United States Supreme Court

precedent and petitioner is not entitled to habeas relief on his claim of instructional error.

D. Prosecutorial Misconduct (Claim 4)

The standard of review for prosecutorial misconduct in federal habeas cases is

"the narrow one of due process, and not the broad exercise of supervisory power." Donnelly v.

DeChristoforo, 416 U.S. 637, 642 (1974). To prevail on a claim for prosecutorial misconduct,

petitioner must show that the conduct "so infected the trial with unfairness as to make the

resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986).

1   "To constitute a due process violation, the prosecutorial misconduct must be 'of sufficient

2   significance to result in the denial of the defendant's rights to a fair trial.'" Greer v. Miller, 483

3   U.S. 756 (1987) (quoting United States v. Bagley, 473 U.S. 667, 676 (1985)).  Moreover, even if

4   an error of constitutional magnitude is determined, it will be held harmless unless petitioner can

5   show that it "had a substantial and injurious effect or influence in determining the jury's verdict"

6   or that it involved "a deliberate and especially egregious error" or "combined with a pattern of

7   prosecutorial misconduct, might so infect the integrity of the proceeding" as to warrant habeas

8   relief.  Brecht v. Abrahamson, 507 U.S. 619, 637, 638 n.9 (1993) (quoting Kotteakos v. United

9   States, 328 U.S. 750, 776 (1946)).

10          Petitioner contends that the trial court should have granted his motion for a

11   mistrial based on prosecutorial misconduct.  Specifically, petitioner claims that the prosecutor

12   violated a prior in-chambers stipulation and ruling by inserting the word "much" on two

13   occasions into a question directed to witness Hernandez on cross-examination.  This claim was

14   presented to the California Court of Appeal on direct appeal and to the California Supreme Court

15   on petition for review, and was denied by both on the merits.  The Court of Appeal gave the

16   following description of the events in the trial court:

17          On cross-examination, the prosecutor asked Hernandez:

18          "Now, you know that the consequences for conviction for charges
             in this case, namely possession of methamphetamine for sale, are
19          *much* greater for the defendant than they are for you, correct?"
             Hernandez answered affirmatively.  (Emphasis added.) Defense
20          counsel objected: "I would object to that question." The court
             overruled the objection. The prosecutor followed up:
21
          "[The prosecutor]: Is that 'yes'?
22
          "[Hernandez]: No. Excuse me? Repeat yourself again?
23
          "Q. [ ] You know that the consequences for a conviction of being
24          in possession of methamphetamine for the purposes of sale are
             *much* greater for the defendant than for you?
25
          "A. I – Doesn't make a difference, does it?
26

1   "Q. You know that the consequences are greater for him than for you, correct?

2   "A. What do you mean by that? 'Greater'?

3   "[The prosecutor]: May we approach?

4   "THE COURT: No. I don't think there's any need to.

5   "Q. [The prosecutor]: You don't know what I mean by the consequences being greater for him than they are for you?

6

7   "A. You mean – I don't understand what you're trying to say here.

8   "Q. Well, initially you said 'yes'. What did you think that you were answering then?

9   "A. You mean he's going to go to jail for it? Is that what you mean?

10   "Q. Well, you know the consequences-

11   "A. They're both going to go to jail.

12   "Q. – For you, correct?

13   "A. Yes.

14   "Q. But you're telling the jury that that has no influence on your coming in here and claiming responsibility?

15

16   "A. I'm just taking the responsibility for it.

17   "Q. And you're saying that for him, the person that you consider to be like a brother, for you, being greater than for you, has no bearing on your coming in here and testifying today?

18

19   "A. I don't understand that.

20   "Q. Knowing that the consequences are greater if the defendant is convicted than if you are for this crime- -

21   "A. Yes.

22   "Q. – Knowing that, are you telling the jury that that has no influence on you at all to make you come in here and testify?

23

24   "A. No.

25   "Q. No, it doesn't, or, no, you're not telling the jury that?

26   /////

"A. I guess I understand – I'm telling the jury – [¶] Are you saying that he's going to get more time for it? For the drugs, you mean? [¶] I don't understand what you are saying.

"Q. Well, I'm saying that the consequences for him are greater. If the two of you are convicted, the consequences are greater for him than for you?

"A. I understand that, yes.

"Q. And you're telling me that that means nothing to you; that has no influence on you at all coming in here and testifying? That has not influenced you at all?

"A. No.

"Q. It's simply that you want to come in here and take the responsibility for it?

"A. Yes." (Emphasis added.)

Upon completion of Hernandez's testimony, the court excused the jury. Thereafter, defense counsel moved for a mistrial arguing that the prosecutor's question which was asked "three times" significantly differed from that agreed to in chambers. Defense counsel noted that defendant had more of a criminal history than Hernandez who had one arrest and no convictions. The prosecutor explained that she had to ask the question several times because Hernandez claimed he did not understand the meaning of consequences. Defense counsel complained that the prosecutor used the word "'penalty.'" The prosecutor retorted that Hernandez brought up the word jail and sentencing and claimed that she complied with the agreement to use the word consequences. Defense counsel stated the prosecutor stated the "consequences are much greater" which was "[i]n clear violation of what we had agreed upon." After clarifying that defense counsel was objecting to the prosecutor's use of the word "much," the court stated: "I'll give her that change-The change of any of what we discussed. The witness didn't understand 'consequences', so she used the word 'penalties', the penalties are greater than they would be for him. [¶] He still didn't seem to understand it, so after repeating it three or four times, he seemed to understand what she was getting at. I don't see any error and improper conduct here. [¶] The bottom line was, it was a motive for him testifying; that's what we were trying to get at. And I think it was covered properly, so I am going to deny the motion for mistrial."

Answer, Ex. D (Court of Appeal Decision) at 13-16.

/////

1    As the Court of Appeal observed, the prosecutor's questioning does appear,

2  strictly speaking, to have violated the stipulation:

3          Initially, we note that the in-chambers stipulation was not on the
           record. In discussing the mistrial motion, however, there seemed to
4          be no disagreement that the prosecutor's question to Hernandez
           was to be limited to whether defendant would suffer greater, not
5          *much* greater, consequences than Hernandez if convicted of
           possession of methamphetamine for sale and transportation of the
6          same. Thus, in cross-examining Hernandez, the prosecutor appears
           to have violated the stipulation.

7

8  Id., Ex. D at 19 (emphasis in original).   However, the Court of Appeal found the error did not

9  deny petitioner a right to a fair trial or due process, and that, in any event, any error was

10  harmless:

11         [T]he prosecutor's two questions where she added the word "much"
           before consequences, did not demonstrate an egregious pattern of
12         misconduct to warrant a conclusion that the trial had been infected
           with unfairness as to violate defendant's right to a fair trial or due
13         process. The trial court stated it would give her that change.

14         In any event, any error was harmless. Defendant successfully
           bifurcated his priors. Defendant did not testify so the jury did not
15         learn of his priors, evidence of which presumably would have been
           adduced on cross-examination. In questioning Hernandez about the
16         consequences he would suffer as compared to defendant, the word
           "greater" itself, even without the word "much" before it, clearly
17         conveyed to the jury that defendant would suffer more. From the
           fact that Hernandez had only one arrest and no convictions and that
18         defendant would suffer much greater consequences, defendant
           claims the jury would infer that defendant had prior convictions.
19         The prosecutor's question alone, to which defendant objected,
           would not necessarily convey that information to the jury. When
20         read in context, perhaps the jury inferred that but that was due to
           defendant's witness who expressed a misunderstanding of the word
21         consequences and blurted out, "You mean he's going to go to jail
           for it" and "Are you saying that he's going to get more time for it?"
22
           Moreover, based on the overwhelming evidence of defendant's
23         guilt and Hernandez's unbelievable testimony, defendant suffered
           no prejudice from the use of the prosecutor's use of the word
24         "much."

25  Id., Ex. D at 19-20.

26  /////

27

1    Petitioner contends that the prosecutor's use of the word "much" constituted

2  prosecutorial misconduct because it improperly placed extrajudicial information before the jury,

3  namely, petitioner's prior criminal record, in violation of petitioner's constitutional right of

4  confrontation.  Petition, Attachment ("Ground 4").  However, as noted by the Court of Appeal, it

5  is not at all evident from the record that the jury would have necessarily made any inferences

6  concerning petitioner's prior record, either from the prosecutor's questioning alone or in the

7  context of the entire trial.  Giving petitioner the benefit of the doubt and assuming that the jury

8  would have "logically inferred that Crespo had suffered prior convictions," it seems no more

9  likely that the jury would have drawn this inference from the words "much greater" than from the

10  word "greater."  Accordingly, the prosecutor's conduct does not appear to have "so infected the

11  trial with unfairness as to make the resulting conviction a denial of due process."  Darden, 477

12  U.S. at 181.  The Court of Appeal thus properly held that the petitioner had not been denied due

13  process or a fair trial as a result of the prosecutor's conduct.

14    The Court of Appeal also properly held that any error was harmless.  The

15  prosecutor's addition of the word "much" on two occasions did not amount to a "deliberate and

16  especially egregious error."  Brecht, 507 U.S. at 638 n.9.  It appears from the record to have been

17  inadvertent, resulting from Hernandez's evasive responses, which made it necessary for the

18  prosecutor to repeat the question several times and to make various attempts to rephrase it when

19  he stated he did not understand what she meant by various terms.  Nor was this error

20  accompanied by a "pattern of prosecutorial misconduct."  Id.  Petitioner cites no other instances.

21  Finally, petitioner has failed to show that the verbal misstep "had a substantial and injurious

22  effect or influence on determining the jury's verdict."  Id. at 637.  It is apparent that even if the

23  prosecutor had phrased the question as stipulated on the two occasions where she added the word

24  "much," the jury would have nonetheless found Hernandez's testimony unbelievable.

25  /////

26  /////

1       Based upon the foregoing, the state court's rejection of petitioner's claim was not

2   contrary to nor an unreasonable application of clearly established United States Supreme Court

3   precedent, and petitioner is not entitled to habeas relief on his claim of prosecutorial misconduct.

4       Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a

5   writ of habeas corpus be denied.

6       These findings and recommendations are submitted to the United States District

7   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

8   days after being served with these findings and recommendations, any party may file written

9   objections with the court and serve a copy on all parties.  Such a document should be captioned

10  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

11  shall be served and filed within ten days after service of the objections.  The parties are advised

12  that failure to file objections within the specified time may waive the right to appeal the District

13  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14  DATED:  February 15, 2007.

15

16  _____

17  U.S. MAGISTRATE JUDGE

18

19

20  cres0404.157

21

22

23

24

25

26